IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| BENJAMIN FRANKLIN FOLGER III, | ) | Case No. 07-51447 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| _____ | ) | |

### MEMORANDUM OPINION DENYING MOTION TO EXTEND AUTOMATIC STAY

This matter came before the Court for hearing on October 3, 2007 on the Motion to Continue Automatic Stay Provisions of 11 U.S.C. § 362 (the "Motion"), filed by the above-referenced debtor (the "Debtor") on September 7, 2007. At the hearing, Vernon J. Cahoon appeared for the Chapter 13 Trustee (the "Trustee"), James L. Hundley appeared for Susan Hawkes (the "Judgment Creditor"), and Neil D. Jonas appeared on behalf of the Debtor.

Based upon a review of the Motion, the evidence and arguments presented at the hearing, and a review of the entire official record, the Motion will be denied. The Court hereby finds as follows:

### I. FACTS

On September 9, 2003, the Debtor filed for Chapter 13 protection (Case No. 03-51580) in the Western District of North Carolina (the "Previous Case"). Ms. Barbara L. White served as counsel for the Debtor, and the Honorable J. Craig Whitley presided. Judge Whitley confirmed the Debtor's Chapter 13 plan (the "Plan") on March 1, 2004. The Plan required the Debtor to make monthly payments of $1,287.00 beginning on February 12, 2004. The Plan provided a return to unsecured creditors of twenty percent of their allowed claims.

1

In the Previous Case, the Debtor had five secured creditors, secured by certain real property (the "Real Property") and three vehicles. The Plan proposed that the Debtor pay $1,712.21 each month to Fairbanks Mortgage and $172.00 each month to Citifinancial. The claims of both Fairbanks Mortgage and Citifinancial were secured by the Debtor's half interest[1] in the Real Property, which was valued at $186,389.00. The Plan proposed to pay the arrearage owed to both creditors, totaling $24,313.00, inside the plan.

The Plan further proposed to pay $28,180.00 to First Community Bank, which was secured by the Debtor's vehicle and two vehicles owned by his co-debtor Spouse, as well as their joint interest in the Real Property.

In the Previous Case, the class of priority creditors consisted of two tax creditors, both of which had liens on the Real Property. The Internal Revenue Service held tax liens of $50,000.00 and the North Carolina Department of Revenue held tax liens of $10,000.00. The Debtor listed no unsecured non-priority creditors on the petition.

On March 23, 2004, the Chapter 13 trustee in the Previous Case (the "Previous Trustee") filed a motion to increase plan payments from $1,287.00 to $2,147.00 because the IRS had filed proofs of claim for substantially higher amounts that were scheduled. On May 17, 2004, Judge Whitley ordered the proposed increase in the Plan payment.

On July 26, 2004, the Previous Trustee filed a motion for the allowance of claims determination and the designation of an unsecured percentage dividend. The Previous Trustee determined there were $17,518.00 in priority unsecured claims and $102,334.00 in nonpriority

---

[1]The Debtor and his non-filing spouse (the "Spouse") own the Real Property as tenants by the entirety, although the Debtor's schedules in the Previous Case do reveal how the Real Property is owned.

unsecured claims, including a $90,545.00 claim by the IRS for tax claims for the years 1994 through 1998 inclusive. Since no objections were filed, no hearing was held, and the motion was allowed.

On March 27, 2007, the Previous Trustee filed a Motion to Dismiss the Previous Case, asserting that the Debtor was delinquent in his plan payments. Judge Whitley issued an order dismissing the Previous Case on June 13, 2007.

On August 27, 2007, the Debtor and his Spouse entered into a consent judgment (the "Consent Judgement") with the Judgement Creditor, which established that the Debtor and his Spouse were liable for actual and punitive damages of $747,000.00 plus court costs to the Judgment Creditor, who is the niece and legal Guardian of Mabel Sale and Fidell Sale. According to the Consent Judgment, the Debtor and his Spouse obtained a power of attorney from both of the Sales, who are their elderly neighbors, and converted almost $260,000.00 of the Sales' property for their own use from April 2004 to February 2007.

On September 14, 2007, the Debtor filed this case (the "Present Case"), with new counsel. On the same day, the Debtor filed this Motion to continue the automatic stay.

The Debtor's schedules in the Present Case show eight secured creditors, but probably only three or, at most, four of these creditors are fully or even partially secured, with the rest being unsecured.[2] It is clear that the Consent Judgment is unsecured.

---

[2]The Debtor's one-half, undivided interest in the Real Property is valued at $102,600.00 in schedules A and D. During the hearing, the Debtor testified that this value was only for his one-half interest. Thus, according to the Debtor, the value of the Real Property in the Present Case is $205,200.00. According to the Debtor's schedules, Select Portfolio Servicing holds a first mortgage on the Real Property to secure a debt of $168,479.00, and Citifinancial holds a second mortgage to secure a debt of $10,435.00. These two claims together total $178,914.00. The record does not reflect the order of priority of the other "secured" creditors listed on the

3

In the Present Case, the Debtor's only listed priority creditor is the Surry County Tax Department in the amount of $1,595.00. There are no priority claims listed in the Previous Case. In the Present Case, the Debtor lists two unsecured creditors who are owed a total of $116,440,[3] but he does not list any unsecured creditors in the Previous Case. When all of these debts are put in their proper categories, the Court finds that in the Present Case the Debtor has $207,757.00 in secured claims, $85,469.00 in priority claims, and $865,940.00 in unsecured claims.

The Debtor testified that he has not worked since 2004. In the Previous Case, the Debtor's Schedule I indicated that his net monthly income was $1,720.00 and that the net monthly income of his Spouse was $3,472.00, for a total of $5,192.00. In the Previous Case, the total monthly expenses for the Debtor's household were $3,871.00, which left the Debtor with a $1,320.00 surplus each month. However, in the Present Case, the Debtor's Schedule I indicates that his net monthly income is $0.00 (he is unemployed) and that of his Spouse is $4,288.00. The total monthly expenses for the Debtor's household are $3,126.00, which leaves the Debtor with only a $1,162.13 surplus each month.

---

Debtor's schedule D; however they include First Community Bank for $11,745.00 (also secured by vehicles), the IRS for $64,464.00 (tax lien), the North Carolina Department of Revenue for $2,849.00 (tax lien), the North Carolina Department of Revenue for $16,561.00 (tax lien), Herbert Graham for $2,500.00 (judgment lien), and the Judgment Creditor for $747,000.00 (the Consent Judgment). Therefore, regardless of the lien priority of these purportedly secured creditors, some of them are not secured at all. Moreover, the Consent Judgment, being the most recent, is junior in priority and certainly not secured. Neither the debt to Herbert Graham or the debt to the Judgment Creditor was listed on the Debtor's schedules in the Previous Case.

[3]Schedule F shows that the Debtor owes $2,500.00 to David R. Vaughan, the attorney who represented his non-filing spouse in the litigation that resulted in the Consent Judgment, and $113,940.00 to the IRS for taxes owed from 1995 through 1998.

The Debtor testified that he used monies that "he gave to himself" from the Sales' bank accounts and that he cashed their Social Security checks to make the Chapter 13 plan payments in the Previous Case. According to the Consent Judgement, the Sales became aware of the "self-gifting" and revoked the Debtor's powers of attorney in September 2006. But by August of 2006, the accounts had been nearly emptied, and by September 2006, all of the Sales' accounts held less than $200.00 total.

On August 25, 2006, the Previous Trustee filed a motion to dismiss the Previous Case for failure to make Plan payments. The parties agreed to continue the hearing on the motion until November 16, 2006. Then, in October in 2006, the Debtor filed a motion to incur debt and pay off the Plan. The Debtor had built equity in the Real Property using payments made outside the Plan and wanted to release the equity that had been built up. Since the Previous Trustee did not oppose it, the motion to incur debt was granted on November 27, 2006. However, the Debtor must have been unable to find any mortgage financiers, as an order dismissing the Previous Case for failure to make Plan payments was entered on June 13, 2007.

## II. DISCUSSION

### A. JURISDICTION AND VENUE

Jurisdiction in this case is proper pursuant to 28 U.S.C. § 157(b)(2)(G). Venue is appropriate under 28 U.S.C. § 1409(a).

### B. STANDARD OF PROOF

If an individual debtor had another bankruptcy case pending within one year of his current

bankruptcy case, then Section 362(c)(3)(A) of the Bankruptcy Code provides that the automatic

stay terminates "with respect to the debtor" thirty days after filing the current case. However, Section 362(c)(3)(B) provides for a continuation of the stay beyond the initial 30-day period if four requirements are met: (1) a motion is filed; (2) there is notice and a hearing; (3) the notice and hearing are completed before the expiration of the original 30-day period; and (4) the debtor proves that the filing of the new case "is in good faith as to the creditors to be stayed." In re Collins, 335 B.R. 646, 651 (Bankr. S.D. Tex. 2005).

Pursuant to Section 362(c)(3)(C), a presumption arises that the present case was not filed in good faith as to all creditors if-

> (I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;
> (II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to-
> 	(aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
> 	(bb) provide adequate protection as ordered by the court; or
> 	(cc) perform the terms of a plan confirmed by the court;
> (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded-
> 	(aa) if a case under chapter 7, with a discharge; or
> 	(bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed . . .

If such a presumption arises, then the moving party must carry its burden by clear and convincing evidence. 11 U.S.C. § 362(c)(3). If the presumption does not arise, then the moving party must carry its burden under Section 363(b)(3)(B) by a preponderance of the evidence. In re Galanis, 334 B.R. 685, 691 (Bankr. D. Utah 2005).

The Previous Case was pending within one year prior to the Present Case. In addition, the Previous Case was dismissed because the Debtor failed to comply with his confirmed plan.

There has been no substantial positive change in the financial or personal affairs of the Debtor since the dismissal of the Previous Case, and there is no reason to conclude that the Present Case will be concluded with a confirmed Chapter 13 plan that is fully performed.  Thus, the Debtor meets the requirements of all three subsections of Section 362(c)(3)©, only one of which is necessary to cause the presumption to arise.  Accordingly, the Debtor must carry his burden under Section 362(c)(3)(B) by clear and convincing evidence.

### C. DETERMINING GOOD FAITH UNDER 362(c)(3)(B)

The Bankruptcy Code does not explain what a moving party under Section 363(c)(3)(B) must show in order to demonstrate that a case is filed in good faith.  For purposes of Section 363(c)(3)(B), this Court has adopted the analysis of  In re Montoya, 333 B.R. 449 (Bankr. D. Utah 2005), and In re Galanis, 334 B.R. 685, 691-694 (Bankr. D. Utah 2005).  See In re Havner, 336 B.R. 98, 104-105 (Bankr. M.D.N.C. 2006)(adopting a totality of the circumstances test informed by the consideration of seven factors).

The first factor to consider in the Court's analysis is the timing of the Debtor's petition.  If the Debtor waited before refiling, with no intention of staying out of bankruptcy, that would have been evidence of bad faith.  Since creditors often incur substantial costs in trying to enforce their rights and collect the debts owed to them, if a debtor who could not pay caused such debts to accumulate, then that debtor would be acting in bad faith. The Present Case was filed three months after the Previous Case was dismissed.  Within the three months, the Debtor incurred more debt through the Consent Judgment and nonpayment of taxes, and he did not make any attempts to repay or negotiate the back taxes.  It does not appear that the Debtor had any

intention of staying out of bankruptcy, but in fact planned on it. This factor weighs against the granting of the Motion.

The second factor to consider is how the debts at issue arose. This factor looks primarily to whether the debts arose from luxury spending, from reoccurring expenses, or whether they were the result of unavoidable costs, such as medical bills. Galanis, 334 B.R. at 695. The significant changes in the debts listed in the two cases are mainly due to tax debts and the debt evidenced by the Consent Judgment. In the Previous Case, the tax debts were scheduled as priority debts totaling about $60,000.00. These claims were allowed in the Previous Case as mostly unsecured debts.[4] In the schedules of the Present Case, a new set of tax claims[5], totaling $83,874.00, were listed, while the priority claims decreased to $1,595.00 and unsecured claims increased to $113,940.00.[6] It appears that the Debtor paid the majority of his priority claims under the Plan in the Previous Case. However, new tax claims accumulated, and the previous IRS claims were not paid. No evidence was presented that the Debtor attempted to negotiate with the IRS as to these tax claims, some of which were over ten years old. The Consent Judgement increased the "secured" debt by $747,000.00.[7] The debt evidenced by the Consent Judgment was "created" by the Debtor's conduct during the Previous Case. These increases in

---

[4] They were allowed as $17,518.00 of priority unsecured debt and $102,334.00 of unsecured debts.

[5] The Debtor listed these tax liens as secured claims. The Court has not determined whether these claims are secured, partially secured, or unsecured.

[6] This appears to include the $90,545.00 allowed IRS claim for taxes owed from 1995-1998.

[7] The Debtor's schedules list this debt as secured, but it is obviously unsecured, as discussed above.

8

debt, totaling over $800,000.00, could have been avoided but for the Debtor's actions. This factor weighs against the granting of the Motion.

The third factor to consider is the Debtor's motive in filing the Present Case. This is a wholly subjective inquiry, but nonetheless relevant. Montoya, 333 B.R. at 460-61. The Debtor testified that he filed to "get on a payment plan for his tax debts." However, he does not need the protections offered by the Bankruptcy Code to negotiate a plan to pay off tax debts. The Internal Revenue Service and the North Carolina Department of Revenue routinely enter into payment plans and offer compromise agreements outside of the bankruptcy context. Therefore, the Court finds the Debtor's "subjective reason" of seeking a plan to address tax debts to be dubious at best. It is too coincidental that the Present Case was filed two weeks after he and his Spouse signed the Consent Judgement. The Court finds that the Debtor filed bankruptcy in an attempt to avoid the debt evidenced by the Consent Judgment. The Debtor did not take affirmative actions to address his debts. This factor weighs against granting the Motion.

The fourth factor to consider is how the Debtor's bankruptcy will affect creditors. Filing for bankruptcy relief will almost always prejudice the debtor's creditors. Galanis, 334 B.R. at 696. In both the Previous Case and the Present Case, creditors filed for relief from the automatic stay soon after the bankruptcy filing. Also, the filing prevents the IRS and the North Carolina Department of Revenue from collecting tax debts from the Debtor. These creditors are prevented from exercising their rights while their collateral is depreciating. This factor weighs against granting the Motion.

The fifth factor to consider is why the Previous Case was dismissed. If the Previous Case was dismissed because the Debtor attempted to manipulate the system or some other bad

conduct, then that fact would bear on whether the Present Case was filed in good faith. Id. The Previous Case was dismissed for the Debtor's failure to make timely plan payments. More importantly, as outlined below, the Debtor engaged in questionable activities and bad conduct in both cases. First, the schedules in both cases are inaccurate and misleading, which raises questions of manipulation. The schedules in the Previous Case so poorly reflected the Debtor's actual situation at that time, this Court had to examine the pleadings filed by the Previous Trustee for reliable claims information. In the Present Case, the Court had to reconstruct the schedules because "secured" and "unsecured" claims were improperly categorized, and the presentation of the value of, and liens on, the Real Property was inaccurate.[8] Second, the Debtor took money, converted from the accounts and Social Security checks of two elderly individuals, to make payments under the Plan in the Previous Case. This factor weighs heavily against granting the Motion.

The sixth factor requires the Court to consider the likelihood, at the time of the filing of the Present Case, that the Debtor could properly fund and maintain a Chapter 13 plan. For three reasons, the Court finds that the Debtor is not likely to be able to fund a plan in the Present Case. First, it is not likely the Debtor will find employment. The Debtor has been unemployed since 2004 and recently converted over $250,000.00 of assets from two elderly individuals. This conduct makes it unlikely that he will secure a job handling money or requiring trust. Second, the schedules in the Present Case indicate that the monthly net income of the Debtor and his spouse is $93.00 short of making the proposed plan payment. The Debtor presented no evidence

---

[8]The Debtor listed his one-half interest in the Real Property but used the full claim of the mortgage creditor. This made it appear that the Debtor's mortgage creditors were significantly undersecured when in fact they were fully secured.

to indicate that this situation will change.  Third, the Debtor has no income; he relies solely on the income of his non-filing Spouse.  She is not bound by the provisions of any plan of reorganization that might be confirmed by this Court nor does she enjoy the protections afforded debtors under the Bankruptcy Code, so her income is somewhat unreliable.  This factor weighs against granting the Motion.

The seventh factor to consider is whether the Trustee or any creditor objected to the Motion.  In this case, both the Trustee and the Judgment Creditor objected.  This factor weighs against granting the Motion.

In an analysis of good faith, "[n]o one factor is determinative.  Instead, under a totality of the circumstances test, a court should consider how the factors operate together in order to determine the existence of good faith."  In re Charles, 334 B.R. 207, 223 (Bankr. S.D. Tex. 2005).  The Court does not merely count the factors for and against a good faith finding.  Rather, the Court considers the factors based on the "totality of the circumstances" analysis.  Charles, 334 B.R. at 226.

The Court determines that, considering the totality of the circumstances, the Debtor has failed to carry his burden to show by clear and convincing evidence that he filed the Present Case in good faith.

### III. CONCLUSION

The Debtor did not rebut the presumption that the Present Case was not filed in good faith, and the automatic stay shall not be extended.

This opinion constitutes the Court's findings of fact and conclusions of law.  A separate

order shall be entered pursuant to Fed. R. Bankr. P. 9021.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| BENJAMIN FRANKLIN FOLGER III, | ) | Case No. 07-51447 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| _____ | ) | |

<u>CERTIFICATE OF SERVICE</u>

Benjamin F. Folger, III
4556 Fern Haven Circle
Winston-Salem, NC 27104

Neil D. Jonas, Attorney for Debtor
1144 West Fourth St.
Winston-Salem, NC 27107

Kathryn L. Bringle, Trustee
P.O. Box 2115
Winston-Salem, NC 27102-2115

James R. Hundley, Attorney for Susan Hawks
P.O. Box 2086
High Point, NC 27261-2086

Michael D. West, Bankruptcy Administrator
P.O. Box 1828
Greensboro, NC 27402-1828